

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 24, 2019**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| WAGGONER CATTLE, LLC, § | Case No.: 18-20126-RLJ-11 |
| § | Jointly Administered |
| Debtor. § | |
| § | |
| § | |
| LONE STAR STATE BANK OF WEST § | |
| TEXAS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Adversary No. 18-02007 |
| § | (Civil Action No. 2:19-cv-00098-D) |
| RABO AGRIFINANCE, LLC, § | |
| WAGGONER CATTLE, LLC, CLIFF § | |
| HANGER CATTLE, LLC, CIRCLE W OF § | |
| DIMMITT, INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Waggoner Cattle, LLC (Waggoner Cattle), Circle W of Dimmitt, Inc. (Circle W),

Bugtussle Cattle, LLC (Bugtussle), and Cliff Hanger Cattle, LLC (Cliff Hanger) (collectively,

1

the Debtors) each filed for chapter 11 bankruptcy on April 9, 2018. Lone Star State Bank of West Texas (Lone Star) initiated this adversary proceeding against Rabo Agrifinance, LLC (Rabo), Waggoner Cattle, Cliff Hanger, and Circle W (collectively, Defendants) on June 29, 2018.[1] Rabo filed its motion to dismiss Lone Star's complaint on August 22, 2018, which motion was granted in part and denied in part by the Court's order dated February 6, 2019.[2] Following the Court's February 6 Order, Rabo filed its answer to Lone Star's complaint that also includes three counterclaims against Lone Star.[3] Lone Star now moves to dismiss Rabo's counterclaims.[4]

## I.

The Court incorporates its prior Memorandum Opinion for a complete description of the relevant background up to the point of Lone Star's motion to dismiss.[5] But to summarize, on *Rabo's* motion to dismiss, of the sixteen causes of action originally alleged by Lone Star, the Court dismissed seven causes and denied dismissal of seven others.[6] Two causes were not addressed by Rabo's motion.[7] On February 25, 2019, Rabo answered the remaining nine causes of action and presented affirmative defenses.[8] Additionally, Rabo alleged the following three counterclaims against Lone Star: (1) breach of contract, (2) conversion, and (3) unjust enrichment.[9] On March 18, 2019, Lone Star filed its motion to dismiss Rabo's counterclaims arguing that the claims fail to state a claim upon which relief may granted (Rule 12(b)(6)), the Court lacks subject matter jurisdiction to adjudicate the claims (Rule 12(b)(1)), the claims violate

---

[1] Doc. No. 1. All "Doc. No." references herein are to the present adversary proceeding, unless otherwise stated.
[2] Doc. Nos. 14, 15, 31.
[3] Doc. Nos. 40, 52.
[4] Doc. Nos. 50, 51.
[5] Doc. No. 30.
[6] *Id*. at 22.
[7] *See id*. at 17.
[8] Doc. No. 40.
[9] Doc. No. 52 at 17–26.

the automatic stay, Rabo has no standing to assert the claims because they are property of the Debtors' respective estates, and the claims are barred by the applicable statute of limitations.[10] Lone Star also filed its answer to Rabo's counterclaims.[11]

With its answer and counterclaims, Rabo made a jury demand to which Lone Star objected.[12] Lone Star moved to strike Rabo's jury demand.[13] On April 8, 2019, the Court heard Rabo's jury demand and, relatedly, Lone Star's motion to strike. By its Order entered May 22, 2019, the Court denied Lone Star's motion to strike finding that "Rabo is entitled to a jury trial on most if not all the causes made by Lone Star."[14]

But that's not all. On May 2, 2019, Rabo filed a motion for withdrawal of the bankruptcy reference.[15] Lone Star opposed the motion; the hearing was held on June 13, 2019.[16] Rabo requests that the District Court withdraw the case in full, i.e., including all pretrial matters (particularly dispositive motions).[17] The Court submitted its Report and Recommendation to the District Court on June 26, 2019, and noted that Rabo's "counsel conceded that . . . [the Court] can hear and submit proposed findings and conclusions to the District Court. . . . Rabo raised no objection to either of [the motions to dismiss] going forward in the bankruptcy court."[18] The Court thus decides the merits of Lone Star's motion to dismiss.

Lone Star recently filed an amended complaint, adding a claim for fraud and realleging its equitable subordination claim.[19] Because it relates to the analysis here, and because the

---

[10] Doc. Nos. 50, 51. All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise stated.
[11] Doc. No. 56.
[12] Doc. Nos. 41, 59, 60.
[13] Doc. No. 82.
[14] Doc. No. 85 at 3.
[15] Doc. No. 73.
[16] Doc. Nos. 91, 92.
[17] *See* Doc. No. 101 at 4.
[18] *Id.* at 4–5.
[19] Doc. No. 105. *See also* Doc. Nos. 98, 104.

amended complaint supersedes the claims contained in the original complaint, the Court considers the allegations made by the amended complaint.

## II.

First, Lone Star's 12(b)(1) motion is a facial attack of the allegations made by Rabo's complaint. If a 12(b)(1) motion challenges whether the complaint alleges sufficient facts upon which subject matter jurisdiction can be based, a court can dismiss such claim based on the complaint alone. *See Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008). In a facial attack, courts accept all material allegations in the complaint as true and construe them in the light most favorable to the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The court does not look beyond the allegations of the complaint. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Second, a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief. A Rule 12(b)(6) motion is appropriate if the plaintiff has not provided fair notice of its claim with factual allegations that, when accepted as true, are plausible and not merely speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Motions to dismiss for failure to state a claim are generally viewed with disfavor. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Third, for Lone Star's limitations contention on Rabo's state-law based counterclaims, § 16.069 of the Texas Civil Practice & Remedies Code states:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

>   (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

The purpose of this statute is to preserve certain affirmative defenses, such as compulsory counterclaims, when the claims would otherwise be barred by the applicable statute of limitations. *See, e.g., Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 790 (N.D. Tex. 2008). It serves to discourage a plaintiff from strategically waiting to bring a claim against an adversary until that adversary's defense arising from the same transactions has been barred by the statute of limitations. *Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 545 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

### A.

Given the similarity between Rabo's counterclaims and the claims of Lone Star's complaint, there can be no doubt that the counterclaims arise out of the "same transaction or occurrence that is the basis of" Lone Star's claims. Rabo filed its counterclaims with its answer; it thus meets the requirements of § 16.069(b) of the Texas Civil Practice & Remedies Code. The Court denies Lone Star's limitations point.

### B.

The Court agrees with Rabo that its opinion in a related adversary proceeding controls on Lone Star's contention that the Court lacks jurisdiction.[20] In *Lone Star State Bank of West Texas v. Moseley*, the Court held that it had "related-to" jurisdiction of plaintiff's causes of action against a third-party (i.e., not the Debtors) because adjudication of such claims could "conceivably affect" the bankruptcy estates.[21] The same analysis applies here.[22]

---

[20] Adversary No. 18-02003, Doc. No. 54 at 6–7.
[21] *Id.*
[22] *See* Doc. No. 30.

Lone Star argues that, unlike the posture of the parties on Rabo's motion to dismiss, Rabo has no standing to prosecute its claims against Lone Star. But the allegations contained in Rabo's counterclaim are similar, if not identical, to those raised by Lone Star's complaint. The Court is thus not persuaded by Lone Star's argument that, because the underlying facts implicate transfers made by and between the Debtor entities, Rabo lacks standing to bring its claims.

For the reasons stated in its November 19, 2018 opinion addressing "related-to" jurisdiction in the *Moseley* case, the Court finds that Rabo's state law claims against Lone Star are related to the Debtors' bankruptcies.[23] Like any potential recovery by Lone Star against Rabo, any recovery by Rabo against Lone Star should likewise result in a reduction of its (Rabo's) claim against the Debtors.

The Court denies Lone Star's motion under Rule 12(b)(1) to dismiss Rabo's counterclaims for lack of jurisdiction.[24]

## C.

Rabo's three counterclaims are based on the so-labeled Calf Ranch Transfers and the "overpayments" that Rabo apparently read about in the Disclosure Statement that was filed in the jointly-administered bankruptcy cases (This is a reasonable inquiry?). Rabo contends, as does Lone Star for its claims, that its rights are governed by the Intercreditor Agreement between the parties.

A claim of conversion requires proof of the following four elements: (1) the plaintiff owned, possessed, or had the right to immediate possession of property; (2) the property was personal property; (3) the defendant wrongfully exercised dominion or control over the property;

---

[23] *See* Adversary No. 18-02003, Doc. No. 54 at 3–7.
[24] Also, as stated in the Court's June 25, 2019 Report and Recommendation to the District Court (entered June 26, 2019), Rabo submits that the District Court has diversity jurisdiction over the adversary proceeding under 28 U.S.C. § 1332. Doc. No. 101 at 3 n.2.

and (4) the plaintiff suffered injury. *See Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.) (citing *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–48 (Tex. 1997)).

A breach of contract claim requires proof of the following elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (referring to Texas law). An unjust enrichment claim requires proof of the following elements:

> (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Reveille Trucking, Inc. v. Lear Corp.*, No. 4:14-CV-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017) (citing to Texas law). Generally, however, a plaintiff cannot recover under a theory of unjust enrichment where a valid contract covers the subject matter of the dispute. *Id.* Resolution of Rabo's breach of contract claim will determine the viability of its unjust enrichment claim. Both claims, therefore, should survive the motion to dismiss.

The Calf Ranch Transfers refer to the flow of funds from Cliff Hanger to Waggoner Cattle and then to Bugtussle. The funds, Rabo alleges, were used for "capital improvements" to the calf ranch that is operated by Bugtussle on land that, apparently, is encumbered by a lien in favor of Lone Star. This result, per Rabo, impairs its asserted first lien against the Cliff Hanger Collateral.

Basing the three causes of action on the "overpayments" is muddled. First, the nature of the overpayments is unclear. Who made payments? Lone Star and Rabo, under all the

pleadings, are lenders to the debtor entities and counter-parties to the Intercreditor Agreement. Are such payments simply another way of referring to advances of funds? Or, perhaps, were payments improperly made to Lone Star rather than Rabo?

Second, asserting payments as the subject of a conversion claim is problematic. Money may be subject to conversion but only if it can be identified as specific chattel. *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F.Supp.2d 696, 707 (E.D. Tex. 2006); *see also Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996) (holding that conversion claim failed because money that is not specific chattel is not personal property that could be converted). Plus, a conversion claim is inappropriate "where an indebtedness may be discharged by the payment of money generally." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied).

The three counterclaims are premised upon Rabo's rights under the referenced Intercreditor Agreement. The agreement undergirds the claims of both parties. Assuming that its interest in shared collateral (and proceeds) is, as Rabo alleges, superior to Lone Star's, the Court is satisfied that the motion should be denied. The existence of additional facts that might clarify the charges here are best left to the discovery process.

### D.

The Court denies Lone Star's remaining ground for dismissal—that Rabo's counterclaims violate the automatic stay. By the counterclaims, Rabo seeks to recover damages from Lone Star on state-law based causes of action. The automatic stay imposed by the *Debtors'* bankruptcy filings is not implicated.

8

### III.

It is, therefore,

ORDERED that Lone Star's motion to dismiss is denied. If so directed by the District Court, the Court submits this Memorandum Opinion and Order to the District Court as its recommendation on Lone Star's motion.

### End of Memorandum Opinion and Order ###